FILED
2014 OCT 7 A 11:10
CLERK
U.S. BANKRUPTCY
COURT - PGH

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Case No. 09-25197-GLT |
| MATTHEW S. VYBIRAL, SR. and GAIL L. VYBIRAL, | : : : | Chapter 13 |
| Debtors. | : : | Related Doc. Nos. 136 and 148 |
| RONDA J. WINNECOUR, TRUSTEE | : : | |
| Movant | : : | |
| v. | : : | |
| BENEFICIAL CONSUMER DISCOUNT COMPANY | : : : | |
| Respondent | : : | |

## MEMORANDUM OPINION

This matter is before the Court upon the *Trustee's Objection to Proof of Claim No. 18* [Doc. No. 136] (the "Objection") and the *Trustee's Brief in Support of Objection to Proof of Claim No. 18* [Doc. No. 148] (the "Trustee's Brief"). The Court is presented with the issue of whether Beneficial Consumer Discount Company d/b/a Beneficial Mortgage Co. of Pennsylvania ("Beneficial") may file an unsecured claim and receive distributions concurrent with other general unsecured creditors when it holds a perfected second mortgage lien on real property previously owned by the Debtors. Upon consideration of the Objection, the Trustee's Brief, and the statements made during the Court hearings, the matter is now ripe for adjudication. For the reasons set forth herein, the chapter 13 trustee's (the "Trustee") Objection is overruled and Beneficial's proof of claim filed at Claim No. 18 shall be allowed in full as a general unsecured claim.

1

I.

The Debtors maintain a residence at 2750 Mount Troy Road, Pittsburgh, Pennsylvania 15212 (the "Property") for which two mortgage liens appear of record. The first lien secures a 2001 loan from Beneficial in the principal amount of $118,789.98 (the "First Mortgage"). The second lien secures an additional loan made by Beneficial in 2007 in the principal amount of $31,036.94 (the "Second Mortgage").

Beneficial filed a secured proof of claim in the amount of $104,665.37 for the debt secured by the First Mortgage. (See Claim No. 7). Beneficial also filed an unsecured proof of claim for the Second Mortgage in the amount of $30,778.53 (the "Unsecured Claim"). (See Claim No. 18). Both claims were timely filed.

The Debtors filed a chapter 13 plan [Doc. No. 7] (the "Plan") that was confirmed on an interim basis on August 31, 2009 [Doc. No. 22]. Among its provisions, the Plan identifies certain secured claims that will not be paid. Specifically, Section 6 of the Plan stated that "[t]he premises and real estate located at 2750 Mt. Troy Road, Pittsburgh, PA 15212 are to be surrendered and therefore the following creditors are not to be paid, to wit: *HFC, *Beneficial, *Allegheny County, *Reserve Twp., *Shaler Area SD." (See Doc. No. 7, at Section 6). Section 16 of the Plan provided that general nonpriority unsecured creditors would share approximately $12,000 in distributions over the life of the Plan. On October 17, 2011, the Debtors filed an Amended Chapter 13 Plan [Doc. No. 92] (the "Amended Plan"). The significant revision in the Amended Plan was that general nonpriority unsecured creditors were no longer receiving a distribution. (See Doc. No. 92, at Section 16). General unsecured creditors were now out of the money.[1] The Court confirmed the Amended Plan on January 9, 2012.

---

[1] The Debtors further modified the Plan on November 14, 2011, but the modification is not material to this Memorandum Opinion because it did not modify Sections 6 or 16. (See Doc. No. 103).

In response to the Debtors' proposed surrender of the Property, Beneficial filed a *Motion for Relief from the Automatic Stay* (the "Motion"). (See Doc. No. 30, at p. 2). Beneficial stated that, as of August 28, 2009, approximately $107,402.41 was owed under the First Mortgage, but the fair market value of the Property was only $92,000.[2] (See id.). The fair market value proffered by Beneficial has never been challenged, and the Trustee does not contest it in connection with her Objection.[3] The Court granted the Motion on November 16, 2009 [Doc. No. 35] so Beneficial could exercise its state law rights against the Property. The Trustee's Brief indicates that Beneficial has not initiated any action to foreclose on the Property and it remains titled in the name of the Debtors. (See Doc. No. 148). Further, because the Debtors intended to surrender the Property, they have not paid the property taxes for tax years 2012 through 2014. (See id.).

The Trustee filed the Objection to challenge the classification of the Unsecured Claim. (See Doc. No. 136). The Trustee argued that "[c]laim 18 is not an allowable unsecured claim because it is secured by property, and the claim does not contain any evidence that the debtors' property has been released from the lien of the second mortgage." (See id.). On June 20, 2014, the Court held a hearing on the Objection. Following the hearing, the Court set a briefing schedule, and the Trustee timely filed her brief. Beneficial did not attend the hearing on June 20, 2014 nor has it responded to the Objection. Since the parties received adequate notice of the matters and have had adequate time to brief the issues involved, the Court is prepared to render its determination.

---

[2]    In Schedule A of the Petition, the Debtors list the value of the Property as $90,000. (See Doc. No. 8, at Sch. A.). While the Debtor and Beneficial assert different values for the Property, the Court need not determine the exact value because for the purposes of the Court's analysis, both agree the value is well below the amount owed on the First Mortgage.

[3]    Likewise, the Trustee has not challenged the Debtors' valuation of the Property in Schedule A.

II.

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).  The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b).  This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

A.

Beneficial, as any unsecured creditor must do in a chapter 13 case, filed a proof of claim for the unsecured Second Mortgage.  (See Claim No. 18); see also Fed. R. Bankr. P. 3002(a) ("An unsecured creditor or an equity security holder must file a proof of claim or interest for the claim or interest to be allowed….").  An unsecured creditor that fails to file a proof of claim may not receive a distribution from the debtor's estate.  See Finkel v. Polichuk (In re Polichuk), 506 B.R. 405, 431 (Bankr. E.D. Pa. 2014) ("In chapter 11 and chapter 13 cases, the failure to file a proof of claim 'does not extinguish a creditor's status, it merely eliminates a creditor's right to a distribution if the creditor has not timely filed a proof of claim.'") (quoting In re Stamford Color Photo, Inc., 105 B.R. 204, 206 (Bankr. D. Conn. 1989)).  Under section 502(a) of the Bankruptcy Code, a proof of claim "is deemed allowed, unless a party in interest … objects."  11 U.S.C. § 502(a).

Further, "[a] proof of claim executed and filed in accordance with these rules shall constitute *prima facie* evidence of the validity and amount of the claim."  Fed. R. Bankr. P. 3001(f).  "Therefore, a proof of claim that alleges sufficient facts to support liability satisfies the claimant's initial obligation to proceed, after which the burden shifts to the objector to produce sufficient evidence to negate the prima facie validity of the filed claim."  Lampe v. Lampe, 665 F.3d 506, 514 (3d Cir. 2011) (citing In re Allegheny Int'l, Inc., 954 F.2d 167, 173-74 (3d Cir. 1992)).  To satisfy her burden of proof and negate the Unsecured Claim, the Trustee "must produce evidence equal in force to the *prima facie* case" that "would refute at least one of the

4

allegations that is essential to [the Unsecured Claim's] legal sufficiency." In re Allegheny, 954 F.2d at 173-74.

The Court's analysis of the Unsecured Claim begins with a review of the evidence presented by Beneficial and attached to the claim. Beneficial used Official Form B10 to file the Unsecured Claim and completed section 6, indicating that it held an unsecured claim in the amount of $30,778.53 because the claim exceeded the value of the collateral. (See Claim No. 18). Presumably Beneficial checked this box after making an independent determination that the Property was not worth more than the outstanding amount of the First Mortgage. To support the Unsecured Claim, Beneficial attached a copy of the loan agreement and recorded Second Mortgage. Each document established the extent of the obligations owed by the Debtor to Beneficial. Beneficial's Unsecured Claim alleges sufficient facts and attaches supporting documentation demonstrating that the Debtors were indebted to Beneficial. For purposes of this Court's analysis, Beneficial was a creditor and had a claim. See 11 U.S.C. §§ 101(5) and (10).

As a presumptively valid claim, the burden is now on the Trustee to refute at least one of the allegations that is essential to the Unsecured Claim. In re Allegheny, 945 F.2d at 173-74. If successful, the burden shifts back to Beneficial to prove the validity of its claim by a preponderance of the evidence. See id. To meet her burden, the Trustee argues that the Unsecured Claim is self-contradictory because "the documents attached to the claim evidence a security interest – more specifically, a mortgage securing a note." (See Doc. No. 148, at p. 3). The Trustee is correct; the documents attached to the Unsecured Claim evidence a security interest. But the fact that Beneficial has a lien does not make the Unsecured Claim self-contradictory. The Trustee equates having a security interest with having a secured claim. Unfortunately for the Trustee, this analysis is incorrect.

Section 506 of the Bankruptcy Code provides in relevant part:

> [a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim.

11 U.S.C. § 506(a). Based on the clear language of section 506(a), a creditor can have a security interest (*i.e.* a validly perfected mortgage) but, for the purposes of a bankruptcy case, be an unsecured creditor because the collateral is worth less than the claim. See Lane v. Western Interstate Bancorp (In re Lane), 280 F.3d 663, 664 (6th Cir. 2002) ("Whether a lienholder has a 'secured claim' or an 'unsecured claim,' in the sense in which those terms are used in the bankruptcy code, depends on whether the lienholder's interest in the collateral has economic value."); see also Zimmer v. PSB Lending Corp. (In re Zimmer), 313 F.3d 1220, 1222-23 (9th Cir. 2002), In re Baker, 300 B.R. 639, 643 (Bankr. W.D. Pa. 2003) (J. Markovitz).[4]  Beneficial,

---

[4] The United States District Court for the Eastern District of Michigan provided an informative and elementary discussion of value and secured versus unsecured claims in bankruptcy:

> Value, as used in § 506, refers to economic value. The extent of the value of the creditor's interest in the property is limited by the economic value of the property included in the bankruptcy estate. For example, if the creditor has a right to payment of $10,000, and this right to payment is secured by a lien on a car which is part of the bankruptcy estate, the economic value of the car dictates the value of the creditor's interest. So, if the car is worth only $2,000, there is only $2,000 available in the bankruptcy estate for the creditor, and the value of the creditor's interest cannot exceed $2,000. Furthermore, if the car has two liens on it, the value of the creditors' interests are calculated in order of priority. Assuming the creditor just discussed is the first lienholder, his interest consumes the entire value of the car in the bankruptcy estate, and there is no value left over for a creditor with a second priority lien. The value of the first creditor's interest in the car is $2,000, and the value of the second creditor's interest in the car is zero. Therefore, if there is no property value in the bankruptcy estate to cover the creditor's interest, the creditor's interest is valueless, despite the amount of the creditor's claim.
>
> Furthermore, 'secured claims' and 'unsecured claims' are terms of art in the Bankruptcy Code. . . .  [I]f the creditor's interest is zero, the creditor's interest in the collateral lacks economic value, and the creditor has an unsecured claim.

Citizens Bank v. Tomasi (In re Tomasi), Case No. 10-11609, 2010 U.S. Dist. LEXIS 144692, at *4-5 (E.D. Mich. Dec. 9, 2010).

6

as the holder of the Second Mortgage on a homestead valued at less than the amount owed on the First Mortgage, is unsecured.[5]

The Trustee does not meet her burden with respect to refuting any part of the Unsecured Claim. The Trustee does not produce an appraisal or other valuation of the Property indicating it is worth more than the estimates proffered by the Debtors and Beneficial.[6] Had the Trustee produced such an appraisal, the Trustee could have questioned whether the Second Mortgage truly lacks economic value. This evidence may have shifted the burden back to Beneficial. To the contrary, the Trustee indicated the Debtors have allowed unpaid property taxes to accrue, further reducing the likelihood that Beneficial could recover on account of the Second Mortgage. Any sale proceeds would necessarily pay the taxing bodies before the mortgage holders.

B.

The Trustee further questions Beneficial's unsecured status by arguing that Beneficial failed to comply with the Pennsylvania Deficiency Judgment Act (the "Act").[7] See 42 Pa.C.S. § 8103 ("Whenever any real property is *sold, directly or indirectly, to the judgment creditor* in execution proceedings, . . . the judgment creditor shall petition the court to fix the fair market value of the real property sold.") (emphasis added).

To fully explore the Trustee's argument, the Court must provide an overview of the Act. The purpose of the Act is to protect a debtor's assets when property is sold at a

---

[5] In effect, Beneficial is representing to the Court, under penalty of perjury, that there is no economic value to the Second Mortgage because the Property will not generate sufficient proceeds to satisfy all of the claims that precede the Second Mortgage in priority.

[6] Because the Trustee has not disputed the value ascribed to the Property by either the Debtors or Beneficial, the Court concludes that the Trustee's silence is a concession that the Property is worth less than the amount owed on the First Mortgage.

[7] The Trustee does not specify whether this argument applies to Beneficial as the First Mortgage holder, to Beneficial as the Second Mortgage holder, or to both entities. For the purposes of this Memorandum Opinion, the Court distinguishes between the two Beneficial claims whenever necessary to address their respective positions with respect to the estate.

7

foreclosure sale for a price far below its fair market value.  See Horbal v. Moxham Nat'l Bank, 697 A.2d 577, 581-82 (Pa. 1997).  It prevents an executing creditor from obtaining a double recovery at the debtor's expense.  PNC Bank, Nat'l Ass'n v. Balsamo, 634 A.2d 645, 654 (Pa. Super. Ct. 1993).  The judgment creditor must give the judgment debtor a credit for the fair market value of the property purchased, regardless of the purchase price.  Loukas v. Mathias, 931 A.2d 661, 667, n.7 (Pa. Super. Ct. 2007).

The Trustee argues that the Act applies to Beneficial because Beneficial did not obtain a deficiency judgment prior to filing the Unsecured Claim.  This argument ignores the plain language of the Act.  The Act clearly states that it applies "whenever any real property is sold, directly or indirectly, to the judgment creditor." 42 Pa.C.S. § 8103; see also Balsamo, 634 A.2d at 654.  The Trustee makes clear that Beneficial, as the First Mortgage holder (and the party that received relief from the automatic stay), has not sold the Property.  (See Doc. No. 148).  The Act is not implicated in this matter because the holder of the Second Mortgage has not foreclosed on the Property and purchased it, either directly or indirectly, at a sheriff's sale.[8]  The First Mortgage and Second Mortgage cannot be treated as one obligation simply because the mortgage holder is the same entity.  It is incorrect to assume that because Beneficial, as the holder of the First Mortgage, received relief from the automatic stay, that Beneficial, as the holder of the Second Mortgage, can pursue its state law rights as well.  (See Doc. No. 148, at p. 9).

As stated *supra*, the Act is inapplicable because Beneficial did not purchase the Property.  Even if the Court found that the Act provided guidance in this case, it does not apply to creditors that did not pursue execution proceedings.  United States v. Epstein, 778 F. Supp. 228, 231 (M.D. Pa. 1991) (The "plain language of § 8103 makes it clear that the only judgment

---

[8] By contrast, the Act will apply if the judgment creditor purchases the property through an attorney, a straw party, or some other indirect means.  Western Flour Co. v. Alosi, 264 A.2d 413 (Pa. Super. Ct. 1970).  It also applies if the judgment creditor is the successful bidder at the sale and then assigns its bid to a third party to whom the sheriff's deed is issued.  Id.

discharged is the judgment or debt upon which the execution proceedings are based…."); see also D'Orizio v. Girondi, 51 Pa. D. & C. 159, 161 (1944).

Accordingly, even if the Court held that the Act applied in this case, the Act is inapplicable to Beneficial's Second Mortgage because Beneficial did not pursue its state law remedies with respect to that mortgage.[9] The Trustee does not cite any case law supporting the application of the Act in the manner she suggests.[10] As provided in In re Allegheny, the Trustee must produce evidence refuting at least one critical element to the creditor's proof of claim to shift the burden. In re Allegheny, 954 F.2d at 173-74. Merely citing the Act and some general legal principles falls woefully short of shifting the burden back to the claimant.

As with all filings, a claim objection must be founded in existing law, contain evidentiary support, and should not be filed for any improper purpose. See e.g., Fed. R. Bankr. P. 9011(b). Too often, the Court sees claim objections that push the boundaries of what is permissible. It appears that objections with little evidentiary or legal support are filed with the expectation of obtaining a default because a creditor lacks the economic incentive to incur the costs necessary to defend the validity of its proof of claim. The Court is not accusing the Trustee of this practice, but this case provides an opportunity to address a growing concern that has arisen in the context of claim objections.

Although the Act is not applicable to this case, its purpose – to prevent double recovery by creditors - is still served. Here, there is no risk of double recovery because Beneficial is bound by its decision to file an unsecured proof of claim. To the extent the

---

[9] Beneficial has no incentive to act on account of the Second Mortgage. If Beneficial foreclosed on the Second Mortgage, it would have to pay all senior lienholders in full before applying any sale proceeds to its debt, and the record indicates the Property would not generate sufficient proceeds to pay the senior debt in full. Further, when (and if) Beneficial does foreclose on the First Mortgage, the Second Mortgage will be expunged as a matter of law.

[10] The Court notes that this is not the only case before it in which the Trustee cites the Act without attempting to explain how it applies. The Trustee filed a similar objection in Bankruptcy Case Nos. 09-26913-GLT and 09-25953-GLT but failed to justify its relevance to the claims at issue.

unsecured creditors receive a distribution, Beneficial will receive its *pro rata* share, but it cannot seek any further recovery on account of the Second Mortgage.

Due to the passage of time, the Court finds that Beneficial is now locked into its position as an unsecured creditor on the Second Mortgage. In the approximately five years that passed since the proof of claim bar date (November 23, 2009), the Debtors have confirmed the Amended Plan and made ongoing payments to the Trustee. Indeed, the Debtors are one payment of $5,899.41 away from fully funding the Amended Plan, at which time the Trustee will perform her final audit. The estate would suffer actual prejudice if Beneficial was, at this point in the case, allowed to amend Claim No. 18.[11] While courts have adopted a liberal approach to allow creditors to amend timely filed proofs of claim, "purported amendments will not be permitted if they actually constitute 'new claims.'" In re Metro Transp. Co., 117 B.R. 143, 147 (Bankr. E.D. Pa. 1990); see also In re Hibble, 371 B.R. 730, 737 (Bankr. E.D. Pa. 2007). An attempt by Beneficial to amend Claim No. 18 at this stage of the bankruptcy case may constitute the filing of an untimely new claim. As more time passes between the bar date and plan completion, it becomes more likely that a creditor's attempt to modify its claim (and subsequent plan treatment) will prejudice the estate.

Through its self-designation as an unsecured creditor, Beneficial has effectively determined that it cannot, and will not, look to any other source of recovery on the Second Mortgage. By its own action, Beneficial elected to receive a distribution as an unsecured creditor and forfeited its right to assert a secured claim. In re Workman, 373 B.R. 460, 465 (Bankr. D.S.C. 2007) ("a creditor may waive any right to which it is entitled, including rights secured by a contract."); see also In re Taylor, 280 B.R. 711, 715-16 (Bankr. S.D. Ala. 2001); In

---

[11]   Beneficial's designation has consequences for the rest of the estate. By joining the pool of unsecured claims, Beneficial's participation, in theory, diminishes the distribution that otherwise would have been received by the other general unsecured creditors. If Beneficial were permitted to retain its right to recover against the collateral, the other unsecured claimants would be prejudiced.

re Krahn, 124 B.R. 78 (Bankr. D. Minn. 1990); In re O'Gara Coal Co., 12 F.2d 426, 426 (7th Cir. 1926) (collecting cases). At this late stage of the case, Beneficial is bound by the position it asserts in the proof of claim, and the Trustee is entitled to rely upon these statements as she concludes the administration of the estate.

III.

For the foregoing reasons, the Court overrules the Objection and sustains the validity of the Unsecured Claim. The Unsecured Claim should be paid on a *pro rata* basis with the other general unsecured claims. An appropriate Order will be entered.

Dated:  October 7, 2014

_____
GREGORY L. TADDONIO
UNITED STATES BANKRUPTCY JUDGE

CC:     Debtors

Jana Pail, Esq.

Stuart Seiden, Esq.

Russell A. Burdelski, Esq.

Beneficial
P.O. Box 10490
Virginia Beach, VA 23450